CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 21 2014

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ADIB EDDIE RAMEZ MAKDESSI, | ) | CASE NO. 7:14CV00225 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| HAROLD CLARKE, | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

Plaintiff Adib Eddie Ramez Makdessi seeks monetary damages and interlocutory injunctive relief in this prisoner civil rights action under 42 U.S.C. § 1983. He claims that unspecified officials are refusing to protect him from alleged acts of intimidation and extortion by prison gang members in the protective custody unit at River North Correctional Center ("RNCC"). Makdessi seeks a court order directing officials to transfer him. Upon review of the record, the court denies the requested interlocutory injunctive relief and dismisses the entire civil action without prejudice.

I. Background

Makdessi alleges that RNCC officials have encouraged gang leadership in the protective custody unit ("PCU") with deliberate indifference to known risks of harm it presents to plaintiff. He alleges that gang members in the PCU are allowed to verbally threaten, physically attack, and extort or steal commissary items from other inmates in the unit, without intervention of the correctional officers despite their awareness of the problems. Makdessi alleges that gang members designated as leaders by prison officials have initiated a plot, in conjunction with officials, to allow inmates from the upper and lower tiers of the PCU to have joint recreation periods, with the sole purpose of attacking Makdessi with greater numbers. Makdessi fears that

if he is not removed from the unit to another prison, gang members will cause him bodily harm or even kill him.

By order entered May 6, 2014, the court directed the Office of the Attorney General ("OAG") to respond to Makdessi's motion. The OAG filed a response based on an affidavit from J. Horton, who investigated Makdessi's complaints at RNCC. Horton states that on May 5, 2014, pending investigation of his allegations that he was at risk of harm if he remained in the PCU, officials removed Makdessi from the unit to a general detention assignment. Horton describes the results of his preliminary investigation in some detail and states that it did not reveal anything to substantiate Makdessi's claims that his life is in danger in the PCU. Horton states that an inmate who is afraid of suffering harm from another inmate may seek to be separated from that inmate by designating him as an enemy and may report stolen property. Makdessi has not requested that any RNCC offender be designated as his enemy, nor has he reported having personal items stolen or extorted from him by other PCU inmates.

Horton also states that RNCC officials have appointed a certain offender in each unit to act as pod representative to meet with the Warden periodically to consider possible improvements to areas of general concern to inmates, such as education, recreation, and food service. The PCU representative, who is an inactive gang member, recently asked all other PCU inmates about the possibility of joint recreation periods for the two tiers of the unit. Officials have not yet decided this issue. Because Horton found no evidence to substantiate Makdessi's fears that he was at risk of physical harm or death in the PCU, Horton advised RNCC staff that Makdessi could be reassigned to the unit whenever an appropriate cell was available.

After Horton's affidavit was filed, Makdessi submitted an amended complaint, consistent with Horton's description of events. Makdessi alleges, however, that officials placed him in

general detention in retaliation for his request for interlocutory injunctive relief. Makdessi also states that when officials offered him the opportunity to return to the PCU, he signed paperwork allowing this transfer. Yet, Makdessi still complains that he is at risk of harm if he remains in that unit and seeks a transfer.

## II. Discussion

### A. Interlocutory Injunctive Relief

Because interlocutory injunctive relief is an extraordinary remedy, the party seeking the preliminary injunction must make a clear showing "[1] that he is likely to succeed on the merits; [2] he is likely to suffer irreparable harm in the absence of preliminary relief; [3] that the balance of equities tips in his favor; and [4] an injunction is in the public interest." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds by 559 U.S. 1089 (2010), reinstated in relevant part by 607 F.3d 355, 355 (4th Cir. 2010) ((quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008)). Each of these four factors must be satisfied. Id. at 347.

The court concludes that Makdessi's requests for interlocutory relief must be denied. Plaintiff admits that after officials transferred him to the general detention unit, safely removed from the dangers of which he complained in the PCU, he chose to return to the unit, despite its conditions. It is not in the public interest to allow inmates to determine how prison officials must provide them protection from other inmates. Moreover, in the face of Horton's very specific evidence that Makdessi's life is not endangered in the PCU as alleged, Makdessi's vague allegations about the dangers in the unit are not sufficient to support a finding that he is likely to suffer irreparable harm in the absence of court intervention. For these reasons, the court will deny Makdessi's motions for preliminary injunctive relief.

B. Failure to Protect

When the court allowed Makdessi to open this civil action with his motion for preliminary injunctive relief, the court also directed him to file an amended complaint. The court specified that the amended complaint should "mak[e] a proper statement of his § 1983 claim that officials are failing to protect him; identify particular individuals as defendants; [and] state facts concerning the conduct each defendant has taken in violation of his rights." (ECF No. 2.) Because Makdessi has failed to comply with this order, the court concludes that the claims in his initial submission (ECF No. 1) must be summarily dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).[1]

Makdessi's newly submitted amended complaint alleges only new claims concerning events that have occurred since the court's conditional filing order. It does not correct the problems the court identified as to his original claim that RNCC officials were failing to protect him. It does not name defendants to this claim, state what each defendant knew about Makdessi's need for protection, or what each defendant did to violate his rights. As such, plaintiff's complaint as amended does not state any actionable claim regarding his allegations that officials failed to protect him. See West v. Atkins, 487 U.S. 42, 48 (1988) (holding that to state actionable §1983 claim, plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law). Accordingly, all claims raised in Makdessi's initial motion for preliminary injunctive relief (ECF No. 1) are dismissed without prejudice under § 1915A(b)(1).

---

[1] The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1).

4

## C. Failure to Exhaust Available Remedies

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and even if the form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings. Id. Failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar an inmate's § 1983 action. Woodford v. Ngo, 548 U.S. 81, 90 (2006). "[W]here failure to exhaust is apparent from the face of the complaint," the court may summarily dismiss the complaint on that ground. Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 682 (4th Cir. 2005).

Makdessi's amended complaint alleges the following claims based on events in the last twenty days: (1) defendants "allowed the sexual harassments, extortion, violence, and threats against plaintiff . . . and retaliated against [plaintiff by] plac[ing him] in segregation for one week and ma[king him] out to be a snitch"; (2) after plaintiff signed a paper to leave segregation, he discovered that investigators had not interviewed his witnesses or looked at video to verify his allegations; and (3) investigators confiscated and read plaintiff's legal paperwork and threatened that if Makdessi complained again about the protective custody unit, he would be placed in segregation for a longer period. Makdessi's prayer for relief in the amended complaint seeks monetary relief and an injunction directing that he be removed to a protective custody unit at

5

Dillwyn Correctional Center with a single cell and no segregation restrictions and that he never be returned to western Virginia.

Makdessi states that he has exhausted administrative remedies twice as to these claims as documented by the attachments to his amended complaint. The attachments are two emergency grievances Makdessi filed on May 6 and 7, 2014, about the confiscation of his legal materials. Officials denied these grievances because the situations described were not emergencies and advised Makdessi that the confiscation of his paperwork related to the ongoing investigation of his complaints about the PCU.

It is well established that offenders in the Virginia Department of Corrections (VDOC) must follow the steps of the regular grievance procedures in Operating Procedure ("OP") 866.1. This procedure requires the inmate to attempt to resolve his issues informally, as documented by an informal complaint form. If the informal complaint form response is unsatisfactory, then the inmate may, within 30 days of the incident at issue, file a regular grievance to the warden or his representative, followed by one or two levels of appeal to higher ranking officials in the VDOC. Until the inmate has completed each step of the OP 866.1 procedures, he has not exhausted available remedies under § 1997e(a).

As to the only claims raised in Makdessi's amended complaint, it is clear that he has not had time to exhaust administrative remedies as required under § 1997e(a). The emergency grievances he filed are not part of the regular grievance procedure steps and do not replace any of those steps. An emergency grievance is a separate remedy provided for inmates in situations that threaten them with imminent harm. If an inmate's emergency grievance about a given situation is rejected as a nonemergency, he still has other administrative remedies available.

Specifically, he can file an informal complaint and then a regular grievance and appeals about that situation.

Makdessi's submissions indicate that as to the claims in the amended complaint, the only administrative remedies he has filed are emergency grievances. Because it is clear that he has other available administrative remedies, namely, the regular grievance procedure and appeals under OP 866.1, the court will summarily dismiss his amended complaint without prejudice for failure to comply with § 1997e(a). An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to the OAG.

ENTER: This 20th day of May, 2014.

                                                                                            /s/ Glen Conrad
                                                                          Chief United States District Judge